**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| CRAWL SPACE DOOR SYSTEM, INC., ) <br> d/b/a CRAWL SPACE DOOR SYSTEMS, INC. ) <br> ) <br> PLAINTIFF, ) <br> ) <br> v. ) <br> ) <br> ) <br> WHITE & WILLIAMS, LLP ) <br> ) <br> DEFENDANT. ) <br> ) | Case No. __:__-cv_____ |

**COMPLAINT**

NOW COMES the Plaintiff, Crawl Space Door System, Inc. ("Crawl Space") and for its Complaint against White &Williams, LLP, states as follows:

**SUMMARY**

1. This matter arises out of the legal representation of Crawl Space by White & Williams and in particular the handling of the legal representation of Crawl Space by White & Williams in the matter of Smart Vent Products, Inc. v. Crawl Space Door System, Inc., case no. 1:13-cv-5691, in the United States District Court for the District of New Jersey (the "New Jersey Case"). The New Jersey Case was filed on September 24, 2013.

2. The New Jersey case arose out of claims against Crawl Space by Smart Vent Products, Inc. ("Smart Vent") claiming that Crawl Space was liable to Smart Vent for 1) Unfair Competition under the Lanham Act, 15 U.S.C. § 1125; 2) Unfair Competition under New Jersey

Statute (Amended) §§ 56:4-1 and -2; 3) Common Law Unfair Competition; 4) Negligent Misrepresentation; and 5) Federal Trademark Infringement under 15 U.S.C. § 1114.

3. The New Jersey Case progressed through six years of litigation including numerous motions and discovery practice, finally culminating in a bifurcated jury trial beginning on October 7, 2019.

4. Filed later but litigated concurrently with the New Jersey Case, Crawl Space brought a case against Smart Vent (the "Antitrust Case") in the United States District Court for the Eastern District of Virginia, case no. 2:19-cv-320, for violations of the Sherman Antitrust Act (the "Sherman Act"), 15 U.S.C. §§ 1-38. The Antitrust Case was filed on June 18, 2019.

5. The Antitrust Case relied upon facts and legal theories that were not actionable under the pending claims in the New Jersey Case, and for damages that were not recoverable under the pending claims in the New Jersey Case.

6. White & Williams knew of the facts and theories relied upon by Crawl Space in the Antitrust Case and were in possession of the pleadings filed in the Antitrust Case.

7. In the presentation of the New Jersey Case, despite knowing of the facts and theories relied upon by Crawl Space in the Antitrust Case, White & Williams presented the Antitrust Case facts and legal arguments to the jury for the jury to consider in its deliberations.

8. As a result, the Antitrust Case was factually and legally preempted and Crawl Space was forced to dismiss its claims in the Antitrust Case, resulting in the loss of damages in an amount not less than thirty million dollars ($30,000,000.00).

## PARTIES

9. Plaintiff Crawl Space is a Virginia corporation with its principal place of business and offices located in Virginia Beach, Virginia.

10. Defendant White & Williams is a U.S. law firm with offices located in Pennsylvania, Massachusetts, New Jersey, Rhode Island, New York, Connecticut, and Delaware. White & Williams's headquarters is located in Philadelphia, Pennsylvania.

### JURISDICTION AND VENUE

11. This Court has personal jurisdiction over Crawl Space in that it is a citizen of the Commonwealth of Virginia with its principal place of business located in Virginia Beach, Virginia.

12. This Court has personal jurisdiction over White & Williams in that White & Williams reached out into Virginia and created a continuing relationship and obligations with Crawl Space including, in the course of its representation of Crawl Space, sending and receiving innumerable messages and documents electronically and otherwise.  Through these actions White & Williams purposefully availed itself of the privilege of conducting activities in Virgina, Crawl Space's claims against White & Williams arise out of the activities of White & Williams directed at Virginia, and the exercise of personal jurisdiction over White & Williams is constitutionally reasonable.

13. This Court has jurisdiction over the subject matter of this dispute under 28 U.S.C. § 1332 as the Parties are citizens of different states (Crawl Space is a citizen of Virginia and White & Williams is a citizen of Pennsylvania) and the amount in controversy exceeds the statutory limit of seventy-five thousand dollars ($75,000.00).

14. Venue is proper in this jurisdiction as the acts and omissions by defendant White & Williams caused substantial monetary damage to Crawl Space in this venue, and the antitrust case being pursued by Crawl Space that was precluded from prosecution and recovery was brought and being litigated in this venue.

## APPLICABLE LAW AND PROCEDURES

15. The acts complained of in this matter occurred in the venue of United States District Court for the District of New Jersey, located in Camden, New Jersey, and therefore the substantive laws of the State of New Jersey apply.

16. Because this matter is being brough in the United States District Court for the Eastern District of Virginia, the procedural law and rules of the Eastern District of Virginia, the United States Fourth Circuit Court of Appeals, and the United States Supreme Court apply.

## BACKGROUND AND FACTUAL ALLEGATIONS

17. The New Jersey Case was brought in the Federal Court for the District of New Jersey against Crawl Space by Smart Vent. Smart Vent is a direct competitor of Crawl Space in the field of providing what are commonly referred to as "flood vents," openings designed to allow ventilation of building foundation crawl spaces while also allowing water pressure to be equalized inside and outside of the foundation walls of structure during flooding so that a differential water pressure inside and outside the walls is not created by flood waters, thereby limiting or completely eliminating the risk of structural failure due to water pressure differentials.

18. The claims brought by Smart Vent against Crawl Space in the New Jersey Case were predicated upon unfair competition claims, which are actionable and recoverable for commercial speech; non-commercial speech, regardless of the intent behind it or the damage caused by it, is not a basis for liability and damages in the unfair competition / Lanham Act context.

19. Crawl Space counterclaimed against Smart Vent for false advertising/unfair competition under 15 U.S.C. § 1125(a) and trademark cancellation under 15 U.S.C. §§ 1064 and 1119.

## Representation of Crawl Space in the New Jersey Case

20. Initially, Crawl Space was represented by the law firm of Rivkin Radler, LLP, which moved to withdraw on August 28, 2015.  By Order of the court on October 26, 2015, White & Williams and Michael N. Onufrak, Esq. ("Onufrak"), a then-partner at White & Williams, were substituted in for Rivkin Radler as counsel for Crawl Space.

21. Siobhan K. Cole, Esq. ("Cole"), a partner at White & Williams (a then-associate attorney at White & Williams) noticed her appearance in the case on February 8, 2016.

22. Onufrak noticed his termination and withdrawal from the case on February 20, 2019.

23. A motion was made for the appearance of Justin E. Proper, Esq. ("Proper"), a partner at White & Williams, as counsel *pro hac vice* on April 26, 2019.

24. Morgan S. Birch, Esq. ("Birch"), an associate attorney at White & Williams, noticed her appearance in the case on April 29, 2019.

25. During the remainder of the New Jersey Case, White & Williams, Cole, Proper, and Birch remained as counsel for Crawl Space.

26. During the later pendency of the New Jersey Case, Crawl Space was simultaneously pursuing a cause of action against Smart Vent in the United States District Court for the Eastern District of Virginia but represented by counsel other than White & Williams.

**Representations as to the Experience of White & Williams, Cole, and Proper**

27. Cole was and is represented to the public as having experience handling "complex areas arising from business disputes . . . [and] has handled matters involving . . . trademark, and all manner of business disputes." *See* biography of Siobhan Cole, Esq., available at www.whiteandwilliams.com/people-SiobhanCole.  Cole is listed as practicing in the Commercial Litigation, Class Actions, and Appellate practice groups at White & Williams.

28. Proper was and is represented to the public as ". . . having handled cases involving allegations of patent infringement, trademark infringement, unfair competition, mortgage fraud, RICO violations, professional malpractice, securities fraud, defamation, breach of warranty and breach of contract, including government contracts."  He is listed as practicing in the Commercial Litigation, Intellectual Property, and Professional Liability practice groups at White & Williams. *See* biography of Justin Proper, Esq., available at www.whiteandwilliams.com/people-JustinProper.

29. The Commercial Litigation practice group at White & Williams further includes practice in the area of antitrust law, and represents to the public that:

> "Antitrust claims and investigations require smart, aggressive advocacy by experienced counsel. Failure to understand the full spectrum of issues can result in adverse outcomes including treble damages and injunctive relief, that can seriously affect the commercial viability of a business.
>
> Members of our Antitrust Group have participated in trials, both civil and criminal, of antitrust cases and have counseled and presented witnesses in grand jury proceedings.
>
> The cases handled have varied as to industry - from high tech to insurance - and size of client - from individuals to Fortune 500 companies. The cases have also involved a wide range of products and services ranging from manufactured products to healthcare.
>
> In addition to representation of clients in civil and criminal litigation, members of the practice group engaged, over many years, in counseling business clients with regard to compliance with the antitrust laws, including the perils of distribution law, communications with competitors, compliance with the Hart-Scott-Rodino Act and the

various problems that arise between competitors at all levels of the chain of distribution. . . ." and that ". . . most members of the antitrust group are experienced in litigation and trial work. . ."

See www.whiteandwilliams.com/capabilities-General-Commercial-Litigation-Practice-Group.

30. The Intellectual Property practice group at White & Williams represents to the public that:

"We understand the essential value intellectual property provides to your business. Our interdisciplinary team regularly advises clients in acquiring, protecting and monetizing intellectual property rights and litigating or alternatively resolving disputes regarding such rights in the U.S. and abroad," and that "[w]e have addressed issues involving patent infringement, trademark infringement, copyright infringement, unfair competition, internet domain name disputes, false advertising, false designation of origin, software licensing and product disparagement claims. We have litigated these cases in Pennsylvania, New Jersey, Delaware, Texas, California, New York, Virginia, Massachusetts, and Kentucky, before the International Trade Commission, at both the trial and appellate court levels before state and federal courts, as well as in private commercial arbitration and arbitration under the Internet Corporation for Assigned Names and Numbers (ICANN). Members of the group also practice before the U.S. Patent and Trademark Office and the Trademark Trial and Appeal Board in trademark cancellation and opposition proceedings." See www.whiteandwilliams.com/capabilities-Intellectual-Property-Practice-Group.

31. Trial was held in the New Jersey Case beginning on October 7, 2019.

32. White & Williams knew of the facts and legal theories relied upon by Crawl Space in the Antitrust Case and had in its possession the complaint and all other pleadings filed in the Antitrust Case.

33. White & Williams had numerous conversations with Crawl Space and counsel representing Crawl Space in the Antitrust Case about the facts and legal theories underlying Crawl Space's claims in the Antitrust Case including that the basis for claims in the Antitrust Case was non-commercial speech by Smart Vent giving rise to claims under the Sherman Act.

34. Despite knowledge of the facts and theories relied upon by its client, Crawl Space, in the Antitrust Case, during the trial phase of the New Jersey Case, White & Williams did not limit the trial presentation of the liability of Smart Vent for unfair competition. Instead, White & Williams presented to the jury evidence of non-commercial speech not actionable or recoverable under the causes of action brought against Smart Vent in the New Jersey Case and argued to the jury that it should consider the non-commercial speech for the purposes of determining the liability of Smart Vent in the New Jersey Case.

35. White & Williams further asked the jury in the New Jersey Case to consider the non-commercial speech for the purposes of determining damages.

36. Attorneys of ordinary skill in the fields of litigation, unfair competition, and antitrust claims know or should know that "commercial speech" for the purposes of unfair competition claims is defined as speech that proposes a commercial transaction.

37. White & Williams knew or should have known that the facts relied upon by Crawl Space in support of its antitrust claims depended in whole or in part on the non-commercial speech that White & Williams presented to the jury in the New Jersey Case for consideration.

38. Attorneys of ordinary skill in the field of litigation know or should know that presentation of facts and legal theories to a jury will preclude those facts and legal theories being relied upon by a client in a separate cause of action and foreclose any further or additional recovery for claims arising from those facts and legal theories.

39. Because the damaging non-commercial speech by Smart Vent relied upon by Crawl Space in support of its antitrust claims was presented to the jury in the New Jersey Case, Crawl Space was precluded as a matter of law from pursuing its claims in the Antitrust Case against Smart Vent.

40. As a result of White & Williams negligently trying the liability of Smart Vent's antitrust violations before the New Jersey Case jury, and White & Williams's failure to secure the damages provided by law for federal antitrust violations, including treble damages and attorney's fees and costs, White & Williams precluded any ability by Crawl Space to litigate its antitrust claims against Smart Vent in the Antitrust Litigation, and also therefore precluded Crawl Space from recovering the damages available as a result of Smart Vent's antitrust actions.

41. White & Williams knew or should have known that the presentation and argument to the jury of the non-commercial speech for the purposes of proving liability and damages would have caused the loss of Crawl Space's ability to rely upon the non-commercial speech in support of its antitrust claims in the Virginia Case.

42. The presentation and argument to the jury in the New Jersey Case of the non-commercial speech for the purposes of proving liability and damages caused the loss of Crawl Space's ability to rely upon the non-commercial speech in support of its antitrust claims in the Virginia Case.

43. White & Williams was also negligent in that it failed to obtain expert testimony regarding damages in the New Jersey Case.

44. White & Williams was further negligent for failing to provide testimony and evidence in support of Crawl Space's claim for damages in the New Jersey Case.

45. White & Williams was further negligent for failing to adequately prepare Crawl Space to testify and provide evidentiary documents in support of its damages in the New Jersey Case.

46. It was error for White & Williams to fail to plead antitrust claims in the New Jersey Case and/or move for consolidation of the New Jersey Case and the Antitrust Case.

47. It was error for White & Williams to ignore legal precedent in both New Jersey and Virginia that matters argued and presented to a jury for consideration in their deliberations, whether actually pled and/or whether actually the basis for liability and recovery in the matter before they jury, would bar recovery for those matters in concurrent and/or subsequent suits.

48. But for White & Williams's malpractice and/or negligence, Crawl Space would have been able to pursue and be awarded judgment in the Antitrust Case.

49. As a result of White & Williams's malpractice, Crawl Space was legally precluded from seeking recourse for the damage caused to it by Smart Vent through Smart Vent's antitrust behavior.

50. Crawl Space's damages in the Antitrust Case were in an amount not less than ten million dollars ($10,000,000.00).  Under the Sherman Act, damages are automatically trebled.

51. Crawl Space's damages made unrecoverable by White & Williams's malpractice are an amount not less than forty million dollars ($40,000,000.00) as well as attorneys fees as provided for under the applicable federal antitrust laws.

## CLAIM I

## LEGAL MALPRACTICE

52. White & Williams, Cole, and Proper are engaged in the general practice of law, and represented to Crawl Space that they had the degree of knowledge and skill ordinarily possessed and used by others engaged in the general practice of law.

53. White & Williams, Cole, and Proper also held themselves out to have the degree of knowledge and skill ordinarily possessed and used by others engaged in the practice of law in civil litigation, intellectual property litigation, and antitrust litigation.

54. White & Williams entered into an attorney-client relationship with Crawl Space.

55. White & Williams represented to Crawl Space that it would use that degree of knowledge and skill which attorneys of ordinary ability and skill possess and exercise in the representation of a client.

56. Standard legal practice requires that attorneys engaged in litigation for a client be knowledgeable about the client's legal matters as a whole, including other related or unrelated cases that are being or may be litigated and which the actions of an attorney in representation of a client could impact negatively.

57. White & Williams did not have the degree of knowledge and skill ordinarily possessed and used by others engaged in the practice of law in civil litigation, intellectual property litigation, and antitrust litigation.

58. White & Williams had a duty to bring to Crawl Space that degree of knowledge and skill which are ordinarily possessed and exercised in similar situations by attorneys of ordinary skill and ability.

59. White & Williams did not use that degree of knowledge and skill which attorneys of ordinary ability and skill possess and exercise in the representation of Crawl Space.

60. White & Williams departed from standard legal practice in its presentation of facts and legal theories of recovery to the jury in the New Jersey Case while knowing that those facts and legal theories of recovery were being relied upon and formed the basis of the facts and legal theories of recovery in the Antitrust Case.

61. White & Williams knew or should have known that the presentation of the facts and legal theories of recovery to the jury in the New Jersey Case would preclude Crawl Space from continuing to pursue the Antitrust Case.

62. As a result of the actions of White & Williams, Crawl Space has been damaged in an amount not less than thirty million dollars ($30,000,000.00).

WHEREFORE, plaintiff Crawl Space Door System, Inc. prays for judgment against White & Williams in an amount to be proven at trial but in no event less than thirty million dollars ($30,000,000.00), punitive damages, attorneys' fees and costs, and other such relief as the Court deems proper.

**JURY TRIAL DEMANDED**

Respectfully submitted:

**CRAWL SPACE DOOR SYSTEM, INC.**

/s/ Duncan G. Byers
Of Counsel
Duncan G. Byers, Esq.
Va. Bar No. 48146
PATTEN, WORNOM, HATTEN & DIAMONSTEIN
12350 Jefferson Avenue, Suite 300
Newport News, VA  23602
Telephone:     (757) 223-4500
Facsimile:     (757) 249-1627
dbyers@pwhd.com
cveals@pwhd.com
*Counsel for the Plaintiff, Crawl Space Door System, Inc.*