**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Norfolk Division)**

CRAWL SPACE DOOR SYSTEM, INC.,    )
d/b/a CRAWL SPACE DOOR SYSTEMS, INC. )
                            )
       **Plaintiff,**               )
                            )
**v.**                             )      **Case No. 2:22-cv-00199-RCY-LRL**
                            )
**WHITE AND WILLIAMS, LLP**       )
                            )
       **Defendant.**             )

## WHITE AND WILLIAMS, LLP'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant White and Williams, LLP, by counsel and pursuant to Fed. R. Civ. P. 12(b)(2), (3), and (6), respectfully moves this Court to dismiss the Amended Complaint of plaintiff Crawl Space Door System, Inc. d/b/a Crawl Space Door Systems, Inc. (hereinafter "Crawl Space") for failure to state a claim upon which relief can be granted, stating as follows:

## I.    INTRODUCTION AND FACTS

This case arises out of White and Williams' legal representation of Crawl Space in a civil suit brought against that company by Smart Vent Products, Inc. in the United States District Court for the District of New Jersey, Case No. 1:13-cv-5691 ("the NJ litigation"). While the lawsuit was filed on September 24, 2013, White and Williams was not was retained until October 26, 2015, when Crawl Space contacted Michael Onufrak, a former partner at White and Williams, seeking representation (Am. Compl., ¶ 20).[1] The Smart Vent suit against Crawl Space alleged the following claims: 1) Unfair Competition under the Lanham Act, 15 U.S.C. § 1125; 2)

---

[1] Crawl Space was initially represented by Rivkin Radler LLP until the firm withdrew its appearance. (Am. Compl. ¶ 20).

Unfair Competition under New Jersey Statute (Amended) §§ 56:4-1 and 2; 3) Common Law

Unfair Competition; 4) Negligent Misrepresentation; and 5) Federal Trademark Infringement

under 15 U.S.C. § 1114 (ECF 3, Am. Compl.at ¶ 1-2). Crawl Space filed a Counterclaim for

false advertising, unfair competition, and trademark cancellation (Am. Compl., ¶ 19).

A few months before the trial, on June 18, 2019, Crawl Space filed a separate suit against

Smart Vent in this Court through counsel other than White and Williams, Case No. 2:19-cv-320,

seeking damages for alleged violations of the Sherman Antitrust Act, which it claimed were not

recoverable in the NJ litigation (Am. Compl, ¶¶ 4, 5, 26, 31).

Trial in the NJ litigation commenced on October 7, 2019 and resulted in a verdict in favor

of Crawl Space on all the Smart Vent claims together with an award of $300,000 to Crawl Space

on its Counterclaim against Smart Vent (Am. Compl., ¶ 31).

On November 23, 2021, after the NJ litigation was concluded, White and Williams'

collection arm, Philadelphia Professional Collections, LLC ("PPC"), brought an action for

unpaid legal fees against Crawl Space in the Philadelphia Court of Common Pleas. Crawl Space

removed the case to the United States District Court for the Eastern District of Pennsylvania,

where it is currently pending under Case No.: 2:21-cv-5476 ("the PA litigation")(see Ex. A,

Notice of Removal). Crawl Space answered; did not file a counterclaim; and later moved to

transfer venue to Virginia (Ex. B, Memorandum in Support of Motion to Transfer Venue). The

Federal court in Pennsylvania denied Crawl Space's motion in a well-reasoned opinion (Ex. C,

Order denying Motion to Transfer Venue).

In this case, Crawl Space alleges that White and Williams' legal representation in the NJ

litigation was deficient in that the case it presented at trial "legally and factually" preempted

antitrust claims against Smart Vent in this Court (Am. Compl., ¶ 7). Crawl Space is seeking

damages in excess of $30,000,000 as a result of White and Williams' allegedly deficient legal representation (Am. Compl., ¶ 8).

## II.   ARGUMENT

Crawl Space's Amended Complaint against White and Williams fails to state a claim upon which relief can be granted, and it should be dismissed. This Court lacks personal jurisdiction over White and Williams; venue is improper in this Court; and Crawl Space's claim for legal malpractice is barred as it was required to be brought as a compulsory counterclaim in the PA litigation. Therefore, White and Williams's Motion to Dismiss should be granted.

### A.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and facts pled that are "'merely consistent with'" liability on the part of a defendant do not meet that standard. Id. at 678. When a pleading asserts legal conclusions couched as factual allegations, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable." Id.

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. Moreover, where the facts do not permit the court to infer more than a mere possibility of misconduct, the complaint fails. Id. at 679.

3

For the following reasons, Crawl Space has failed to state a claim against White and Williams, and the Amended Complaint should be dismissed.

### B.    THE COURT LACKS PERSONAL JURISDICTION

"In Virginia, to establish jurisdiction over a nonresident, this Court must consider first whether jurisdiction is authorized by Virginia law, and then whether the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment to the United States Constitution." Hirsch v. Johnson, No. 1:14CV332 JCC/TRJ, 2014 WL 2916748, at *3 (E.D. Va. June 26, 2014) (unreported) (citing Consulting Engineers Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009)).

Virginia's long-arm statute, Va. Code Ann. § 8.01-328.1, states in relevant part that a court may exercise jurisdiction over a person "as to a cause of action arising from the person's"

> 1. Transacting any business in this Commonwealth; 2. Contracting to supply services or things in this Commonwealth; 3. Causing tortious injury by an act or omission in this Commonwealth; 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth;…

"Because Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause, 'the statutory inquiry merges with the constitutional inquiry.'" Young v. New Haven Advoc., 315 F.3d 256, 261 (4th Cir. 2002) (quoting Stover v. O'Connell Assocs., Inc., 84 F.3d 132, 135–36 (4th Cir. 1996); citing English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir.1990)); see also Peninsula Cruise, Inc. v. New River Yacht Sales, Inc., 257 Va. 315, 512 S.E.2d 560, 562 (1999). "As a result, the Court need only undertake one inquiry to determine whether the exercise of jurisdiction here comports with the Fourteenth Amendment's due process requirements." Id.

4

This Court could exercise personal jurisdiction over White and Williams through a finding of either general or specific jurisdiction. Allen v. James, 381 F. Supp. 2d 495, 497 (E.D. Va. 2005) (*citing* Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)). If specific, it must be based on the defendant's contacts with the state, in consideration of the following factors: "(1) the extent to which the defendant "purposefully avail[ed]" itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.' ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002), *citing* Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 216 (4th Cir. 2001); Helicopteros, 466 U.S. at 414 n. 8. To emphasize requirement (2) above, "the acts conferring jurisdiction under the statute must coincide with the acts giving rise to the substantive claim." Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Cap. Corp., 761 F. Supp. 423, 426 (E.D. Va. 1991) (*citing* City of Virginia Beach, Va. v. Roanoke River Basin Ass'n, 776 F.2d 484, 487 (4th Cir. 1985); E. Sci. Mktg., Inc. v. Tekna-Seal, Inc., 696 F. Supp. 173, 176 (E.D. Va. 1988); Va. Code Ann. § 8.01-328.1(A), (B)).

If general, it "must arise from the defendant's general, more persistent, but unrelated contacts with the State. To establish general jurisdiction over the defendant, the defendant's activities in the State must have been 'continuous and systematic,' a more demanding standard than is necessary for establishing specific jurisdiction." ALS Scan, Inc., 293 F.3d at 712 (*citing* Helicopteros, 466 U.S. at 414 n. 9; ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997)). "[T]he threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction." Id. at 715 (citation omitted).  If neither of

these findings can be made, as in this case, this Court cannot constitutionally exercise personal jurisdiction over White and Williams. Id.

Here, the issue is whether this Court, sitting in Virginia, can exercise general or specific jurisdiction over an out-of-state law firm for legal services provided in New Jersey, where the client is domiciled in Virginia and initiated the relationship between the parties. This Court and other courts have considered this precise issue—personal jurisdiction over out-of-state defendants providing professional services where the plaintiff client is domiciled in the forum—on multiple occasions.

In Hirsch, 2014 WL 2916748, this Court considered the question of its jurisdiction over an Arizona attorney. Noting that the attorney did not "maintain offices, agents, or own property in Virginia", the Court found that "the only basis this Court could have for exercising specific jurisdiction over Romney is his contractual relationship with Plaintiffs." Id. at 4. The attorney, licensed and practicing in Arizona, became involved in the matter because he responded to a request posted on "phoenix.craigslist.org" which sought an attorney to act as local counsel in a matter in the Superior Court of Arizona. Hirsch, 2014 WL 2916748, at *1, 4. The Court found that the attorney "did not reach into Virginia to initiate this business; he responded to an advertisement aimed at Phoenix lawyers, concerning work to be performed in Arizona." Id. Further, it found that "[n]o portion of the [Arizona case] was litigated in Virginia and [the attorney] did not conduct any work on this matter outside of Arizona." Id. at 4.

Although the attorney entered into a contract with a resident of Virginia, "'[t]he mere existence of a contract with the out-of-state party cannot automatically establish sufficient minimum contacts.'" Id. at 5 (quoting Initiatives Inc. v. Korea Trading Corp., 991 F. Supp. 476, 479 (E.D. Va. 1997); citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478, 105 S. Ct.

2174, 85 L. Ed. 2d 528 (1985)). Because "[t]he contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction…[a] court should therefore evaluate prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing in determining whether defendant has purposefully established minimum contacts within the forum." Id. (citing Burger King Corp., 471 U.S. at 479) (internal quotation marks omitted).

The contract that was at issue concerned the attorney's representation of the plaintiffs in the Arizona litigation. "All acts contemplated under the engagement agreement concerned the [Arizona] litigation in the Superior Court of Arizona; [the attorney's] services would necessarily be performed in Arizona." Id. Over the course of the representation, the attorney "telephoned and sent correspondence, electronic and otherwise, hundreds and hundreds of such communications", to the plaintiff in Virginia, but the Court found that "[c]orrespondence alone…is not sufficient to establish minimum contacts that satisfy due process." Id. (citing Cape v. von Maur, 932 F. Supp. 124, 128 (D. Md. 1996)).

In concluding, the Court found that the attorney "did not purposefully avail himself of the benefits or protections of Virginia law by responding to a post on a Phoenix, Arizona specific section of Craigslist, and subsequently entering into an engagement agreement concerning an Arizona lawsuit, merely because one of the clients is a resident of this state." Id. (citing Masselli & Lane, PC v. Miller & Schuh, PA, 215 F.3d 1320 (4th Cir. 2000) (unpublished); Cape, 932 F. Supp. at 128). "Indeed, this Court has noted with approval that 'other courts have suggested that the question of personal jurisdiction in legal malpractice situations involving out-of-state

attorneys may turn on where the underlying lawsuit would have been prosecuted and which state's law would have applied.'" Id. (*citing* Allen, 381 F. Supp. 2d at 498).

Distinguishing a Fourth Circuit case, the Hirsch Court noted "that this case is significantly distinguishable from the case of English & Smith v. Metzger, 901 F.2d 36 (4th Cir. 1990), where the Fourth Circuit affirmed the Eastern District's exercise of personal jurisdiction over an out-of-state attorney. English & Smith, 901 F.2d 36." Id. "In English & Smith, the defendant Metzger, a California lawyer, 'initiated the relationship' with Smith, a Virginia lawyer." Id. (*citing* English & Smith, 901 F.2d at 39). "Metzger 'entered into contracts with Smith by virtue of action taken in Virginia, and carried on a continuing relationship with Smith in Virginia.'" Id. (*quoting* English & Smith, 901 F.2d at 39–40). "Accordingly, the court found that Metzger's 'intentional contacts with the State' were sufficient to meet the requirements of due process." Id. (*quoting* English & Smith, 901 F.2d at 40). "Here, by contrast, Plaintiffs initiated the relationship with Romney in Arizona, for work to be performed in Arizona. Unlike the defendant in English & Smith, Romney did not purposefully direct his activities at Virginia such that the exercise of jurisdiction would comport with due process." Id. at 6.

In finding that there was no general jurisdiction over the attorney, the court noted the United States Supreme Court's language in Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 131 S. Ct. 2846, 2853, 180 L. Ed. 2d 796 (2011): "for an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." As the attorney was an Arizona resident with no contacts with Virginia, other than the plaintiff, the Court held that general jurisdiction was improper. Id.

In Cape, 932 F. Supp. 124, the United States District Court for District of Maryland held that personal jurisdiction was lacking over out-of-state attorneys, where the defendant's actions

were not directed at the state of Maryland, and the defendants' only connection to Maryland was the fact that their client plaintiff resided there. The only contacts that the defendants had with Maryland consisted of "phone calls and correspondence." Id. at 128. "Such contacts, quite simply, do not meet any of the three prongs of the showing required for specific personal jurisdiction. Defendants never purposely directed their activities toward residents of Maryland nor did they purposely avail themselves of the privilege of conducting activities here; Plaintiffs' cause of action does not arise out of or result from Defendants' forum-related contacts". Id. "Generally speaking, correspondence and phone calls from out-of-state defendants to in-state plaintiffs are insufficient as a matter of law to establish the minimum contacts that satisfy due process." Id. (citing Leather Masters (PVT), Ltd. v. Giampier Ltd., 836 F. Supp. 328, 331 (D. Md. 1993); Coating Engineers (Priv.) Ltd. v. Elec. Motor Repair Co., 826 F. Supp. 147, 149 (D. Md. 1993)). In so holding, the court noted that "case law overflows on the point that providing out-of-state legal representation is not enough to subject an out-of-state lawyer or law firm to the personal jurisdiction of the state in which a client resides." Id. (citing Sher v. Johnson, 911 F.2d 1357, 1363 (9th Cir. 1990); Austad Co. v. Pennie & Edmonds, 823 F.2d 223 (8th Cir. 1987); Kowalski v. Doherty, Wallace, Pillsbury & Murphy, Att'ys at L., 787 F.2d 7 (1st Cir. 1986); Mayes v. Leipziger, 674 F.2d 178 (2d Cir. 1982)).

In Allen, 381 F. Supp. 2d at 497, the Eastern District of Virginia distinguished Cape, finding that personal jurisdiction existed over out-of-state attorneys in a case involving South Carolina attorneys' representation of a Virginia resident, for an accident which occurred in Virginia, because, in contrast to Cape, "the defendants in the instant case contracted with plaintiff to provide legal representation in connection with a car accident which took place in Virginia. In so doing, they purposefully availed themselves of the privilege of conducting

9

business in this state." Id. at 498. Following this holding, the Court noted with approval that "other courts have suggested that the question of personal jurisdiction in legal malpractice situations involving out-of-state attorneys may turn on where the underlying lawsuit would have been prosecuted and which state's law would have applied." Id.

In Stover v. O'Connell Assocs., Inc., 84 F.3d 132 (4th Cir. 1996), the Fourth Circuit found that a Maryland federal court lacked jurisdiction over a New York private investigation firm, based on firm's lack of sufficient contacts with Maryland. There, the defendant contacted Maryland investigation firms by telephone, requesting information about the plaintiff, and those firms provided that information to the defendant. The court held that the defendant could not "reasonably have anticipated being 'haled into court'" in Maryland, finding that it would "contravene the Due Process Clause" to find personal jurisdiction based on those limited contacts, where none of the contacts were made with the physical presence of the defendant in Maryland. Id. at 137.

In Rosario v. Wands, No. 1:09-CV-663 AJT/TCB, 2009 WL 2986614 (E.D. Va. Sept. 17, 2009) (unreported), the Court analyzed whether jurisdiction over a non-resident psychic, operating a New York based corporation, was proper. Id. at 1. Finding that general jurisdiction was improper, the Court found that the corporation's website, which "touts his national following" and adversities nationally, "does not establish his 'presence' in Virginia sufficient to form a basis for personal jurisdiction." Id. at 4 (citing ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707 (4th Cir. 2002)). The corporation's website was not interactive, and the corporation did not have manifest intent to target Virginia. Id. "There is no evidence of any contacts with Virginia other than through Dr. Rosario; and these contacts are hardly the kind of 'continuous and systematic' activities that confer general jurisdiction." Id.

In analyzing specific jurisdiction, the Court noted that the parties' relationship was initiated out-of-state, and that the corporation was never present in Virginia when providing services to the plaintiff. "Instead, they communicated over the telephone and through e-mail" and "[g]enerally, '[m]ere telephonic, facsimile and written communications in furtherance of a transaction are not sufficient contacts to form a basis for personal jurisdiction.'" Id. (*citing* Superfos Invs. Ltd. v. FirstMiss Fertilizer, Inc., 774 F. Supp. 393, 397–98 (E.D. Va. 1991)). Citing with approval Cape and Stover, and distinguishing Allen, the Court held that no specific jurisdiction existed because the psychic "has contacts with Virginia only because his client lives there, an arguably random and fortuitous fact, brought about by [the plaintiff] herself after she established her relationship with [the psychic] in New York and entirely unrelated to the substance or purpose of their relationship." Id. at 5.

Further authority for the proposition that out-of-state defendants are only subject to a forum's jurisdiction when the defendants' activities were to take place in the form is provided by rulings in other district courts. *See* First Reliance Bank v. Romig, No. 4:14-CV-00084-BHH, 2014 WL 5644602, at *6 (D.S.C. Nov. 4, 2014) (unreported) ("Courts reviewing these and other similar cases have noted a 'common theme' in their resolution: 'where the legal malpractice claim is filed in the same forum as the original action serving as the predicate for the legal malpractice (or where it would have been filed), jurisdiction is found; where the legal malpractice claim is filed in a different forum, jurisdiction is lacking.") (*quoting* Dennett v. Archuleta, 915 F. Supp. 2d 248, 253–54 (D.R.I. 2013)); *see also* City Cap. Markets Corp. v. McCalla Raymer LLC, No. 2:10-CV-00116, 2011 WL 1259053, at *6 (S.D.W. Va. Mar. 30, 2011) (unreported) ("Here, as in Stover and Cape v. von Maur, the defendants have contacts with West Virginia only because City is headquartered in West Virginia. The underlying action which

the defendants were retained to resolve on behalf of City is confined entirely to Georgia. In contrast to the attorney-defendants in Allen v. James, McCalla and Wilhelmi agreed to represent City in Georgia litigation that ostensibly could be, and in fact was, resolved entirely within the state of Georgia… [t]he Court is in agreement with the majority of precedent on this issue, that merely 'providing out-of-state legal representation is not enough to subject an out-of-state lawyer or law firm to the personal jurisdiction of the state in which the client resides.'" (*citing* Cape, 932 F. Supp. at 128); Allen, 381 F. Supp. 2d at 498).

Here, White and Williams does not maintain an office in Virginia, and its headquarters are located in Philadelphia, Pennsylvania (ECF 3, Am. Compl.at ¶ 10). The lawsuit underlying the representation was brought against Crawl Space in the United States District Court for the District of New Jersey (ECF 3 at ¶¶ 1, 9). No portion of the case was litigated in Virginia. Accordingly, the firm's only connection to Virginia is that its former client was located there. Moreover, White and Williams' legal representation of Crawl Space was initiated by Crawl Space, when Crawl Space's President contacted the firm's Philadelphia office requesting that that it represent Crawl Space in the New Jersey case (Ex. A at p. 13).

"When the cause of action does not arise out of defendant's actions in the forum state, the plaintiff must establish general jurisdiction, showing that defendant has 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Allen, 381 F. Supp. 2d at 497 (citing Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). "General jurisdiction exists for claims entirely distinct from the defendant's in-state activities where a defendant's activities in a state have been 'continuous and

systematic.'" Hirsch, 2014 WL 2916748, at *3 (quoting Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 415–16).

For specific jurisdiction to exist, the Court must determine: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the Plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Allen, 381 F. Supp. 2d at 497 (citing ALS Scan, Inc., 293 F.3d at 712).

Assessing the first prong of this specific jurisdiction test, "courts in the Fourth Circuit consider a variety of nonexclusive factors in determining whether a defendant has purposefully availed himself of the forum at issue." Hirsch, 2014 WL 2916748, at *3 (citing Consulting Engineers Corp., 561 F.3d at 278). As stated in Hirsch,

> "In a business context, these factors may include: (1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; (7) the nature, quality and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum." Hirsch, 2014 WL 2916748, at *3.

Neither general nor specific jurisdiction exists over White and William in this Court. Its only connection is Crawl Space's Virginia location, and communications with Crawl Space over the course of the NJ litigation. (ECF 3 at ¶¶ 1, 9). None of these connections are sufficient for the existence of general or specific jurisdiction. With no offices in Virginia, White and Williams does not engage in "continuous and systematic" activities in Virginia. Crawl Space admits as much in its Amended Complaint. (ECF 3 at ¶ 10).

Crawl Space does not appear to allege the existence of general jurisdiction, stating only that White and Williams "reached out into Virginia and created a continuing relationship and obligations with Crawl Space" by sending and receiving electronic messages and documents to Crawl Space in Virginia , thereby "purposefully [availing] itself of the privilege of conducting activities in Virginia" (ECF 3 at ¶ 12)—language that is included in the specific jurisdiction analysis. *See* Consulting Engineers Corp., 561 F.3d at 278. Crawl Space does not allege that White and Williams has any other "minimum contacts" with Virginia outside of its representation of Crawl Space in the NJ litigation. As noted above, Crawl Space's domicile in Virginia is an insufficient basis to exercise general or specific jurisdiction over White and Williams for its representation of Crawl Space in a New Jersey case. *See* Cape, 932 F. Supp. at 128; Hirsch, 2014 WL 2916748, at *4–6; Rosario, 2009 WL 2986614, at *5 (Defendant only had contacts with Virginia because his client lived there, which contact was "brought about by [the plaintiff] herself after she established her relationship" with the defendant in New York and was "entirely unrelated to the substance or purpose of their relationship.").

That White and Williams communicated with its client, Crawl Space, over the course of the NJ litigation is likewise insufficient for the exercise of general or specific jurisdiction. *See* Superfos Investments Ltd., 774 F. Supp. at 397–98 ("Mere telephonic, facsimile and written communications in furtherance of a transaction are not sufficient contacts to form a basis for personal jurisdiction."); Cape, 932 F. Supp. at 128 ("correspondence and phone calls from out-of-state defendants to in-state plaintiffs are insufficient as a matter of law to establish the minimum contacts that satisfy due process"); Hirsch, 2014 WL 2916748, at *5; Rosario, 2009 WL 2986614; Leather Masters (PVT), Ltd., 836 F. Supp. at 331 ("without more, communications made from outside the State to a Maryland resident are not enough to justify the

exercise of personal jurisdiction over an out-of-state defendant"); <u>Coating Engineers (Private)</u> <u>Ltd.</u>, 826 F. Supp. at 149 (telephone conversations with Maryland plaintiff did not constitute purposeful activity within Maryland for the purposes of Maryland's long arm statute); <u>Stover</u>, 84 F.3d at 137 ("the use of a telephone to facilitate transactions between remote locations serves as an alternative to presence. To conclude that such activity establishes presence in a state would upset generally held expectations, *see* <u>Craig v. Gen. Fin. Corp. of Illinois</u>, 504 F. Supp. 1033, 1038–39 (D. Md. 1980) (*in personam* jurisdiction does not exist over person who placed various telephone calls and mailed letters to forum state), and redefine the nature of state sovereignty")). While Crawl Space argues that "in the course of [White and Williams'] representation of Crawl Space" the firm sent and received "innumerable messages and documents electronically and otherwise", thereby "purposefully [availing] itself of the privilege of conducting activities in Virginia", (ECF 3 at ¶ 12) such communications are legally insufficient to establish jurisdiction over this out-of-state defendant. The communications were not purposeful and were not directed at Virginia; Crawl Space initiated the parties' relationship for the purpose of litigation taking place in New Jersey; and the communications were not related in any way to the purpose of White and Williams' legal representation in New Jersey. Any communications were confined to the NJ litigation, and accordingly arose out of and were directed to that litigation which occurred entirely out-of-state.

Moreover, White and Williams did not initiate the relationship with Crawl Space, rather, Crawl Space initiated the relationship by contacting the firm; thus, White and Williams cannot have purposefully directed any activity at Virginia or purposefully availed itself of the privilege of conducting activities in Virginia. *See* <u>Hirsch</u>, 2014 WL 2916748, at *4; <u>Masselli & Lane, PC</u>, 215 F.3d 1320 ("When a case involves legal representation by an out-of-state law firm, courts

15

emphasize the importance of ... who initiated the contact ."); *c.f.*, <u>English & Smith</u>, 901 F.2d 36 (Personal jurisdiction over California found where the California lawyer-initiated contact with the Virginia lawyer).

 White and Williams has no contacts with Virginia outside of its contractual relationship with Crawl Space and said contract cannot be the basis for this Court's jurisdiction. *See* <u>Initiatives Inc.</u>, 991 F. Supp. at 479; <u>Burger King Corp.</u>, 471 U.S. at 478) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."); <u>Hirsch</u>, 2014 WL 2916748, at *5.

 The action underlying this malpractice claim was prosecuted solely out-of-state. The NJ litigation took place solely in that state—not Virginia—and accordingly jurisdiction in this Court is improper. Arguably, this action should have been brought in New Jersey, where the alleged malpractice occurred. *See* <u>Cape</u>, 932 F. Supp. at 128 ("The Plaintiffs' only nexus with this State, [plaintiff's] personal residence, is legally insufficient to exercise specific personal jurisdiction.") (citing <u>Sibert v. Flint</u>, 564 F. Supp. 1524, 1529 (D. Md. 1983)); <u>First Reliance Bank</u>, 2014 WL 5644602, at *6 (noting the "common theme" that 'where the legal malpractice claim is filed in the same forum as the original action serving as the predicate for the legal malpractice (or where it would have been filed), jurisdiction is found; where the legal malpractice claim is filed in a different forum, jurisdiction is lacking."); <u>City Capital Markets Corp.</u>, 2011 WL 1259053, at *5–6 ("In contrast to the attorney-defendants in <u>Allen v. James</u>, [defendant attorneys] agreed to represent [plaintiff] in Georgia litigation that ostensibly could be, and in fact was, resolved entirely within the state of Georgia"); *c.f.* <u>Allen</u>, 381 F. Supp. 2d at 497 (distinguishing <u>Stover</u>

and <u>Cape</u> on the basis that the out-of-state attorneys agreed to represent plaintiff in car accident suit; the car accident occurred in Virginia; and the suit would have thus been tried in Virginia).

Therefore, jurisdiction over White and Williams does not exist in this Court, and this case should be dismissed. The parties' contract for legal representation in out-of-state litigation, communications regarding that litigation, and Crawl Space's domicile in Virginia are legally insufficient for the exercise of jurisdiction over White and Williams by this Court.

### C.    VENUE

Generally, a civil action may be brought in

1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. §1391(b).

Here, the defendant resides out-of-state; the events giving rise to the claim occurred out-of-state; this Court cannot exercise personal jurisdiction over White and Williams; so venue is likewise improper in this Court.

### D.    COMPULSORY COUNTERCLAIM

Fed. R. Civ. P. 13 (a) states that "A pleading must state as a counterclaim any claim that-- at the time of its service--the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." An exception to this rule is where "when the action was commenced, the claim was the subject of another pending action." Fed. R. Civ. P. 13(a)(2). "The policy underlying this rule is judicial

economy." Transamerica Occidental Life Ins. Co. v. Aviation Off. of Am., Inc., 292 F.3d 384, 389 (3d Cir. 2002) (*citing* Fed. R. Civ. P. 1; S. Const. Co. v. Pickard, 371 U.S. 57, 60, 83 S. Ct. 108, 9 L. Ed. 2d 31 (1962); Aldens, Inc. v. Packel, 524 F.2d 38, 51 (3d Cir. 1975)); *see* Southern Const. Co., 371 U.S. at 60 (Rule 13(a)'s purpose is "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters"); Aldens, Inc., 524 F.2d at 51 ("the fundamental policy underlying Rule 13" is "the expeditious resolution of all controversies growing out of the same transaction or occurrence or between the same parties in a single suit").

This legal malpractice action against White and Williams should have been brought as a counterclaim in the Pennsylvania litigation, which was filed first. Whether a counterclaim in that action was compulsory is properly analyzed under Third Circuit law.

"For a claim to qualify as a compulsory counterclaim, there need not be precise identity of issues and facts between the claim and the counterclaim; rather, the relevant inquiry is whether the counterclaim 'bears a logical relationship to an opposing party's claim.'" Transamerica Occidental Life Ins. Co., 292 F.3d at 389–90 (citing Xerox Corp. v. SCM Corp., 576 F.2d 1057, 1059 (3d Cir. 1978)).

As noted by the Third Circuit, "[t]he concept of a 'logical relationship' has been viewed liberally to promote judicial economy. Thus, a logical relationship between claims exists where separate trials on each of the claims would 'involve a substantial duplication of effort and time by the parties and the courts.'" Id. (*citing* Xerox Corp., 576 F.2d at 1059). "Such a duplication is likely to occur when claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties." Id. (*citing* Xerox Corp., 576 F.2d at 1059; Great Lakes Rubber Corp. v. Herbert Cooper Co., 286 F.2d 631, 634 (3d Cir.

1961)). "In short, the objective of Rule 13(a) is to promote judicial economy, so the term 'transaction or occurrence' is construed generously to further this purpose." Id.

"A compulsory counterclaim must be asserted in the answer or a defendant will be barred from litigating it." Geisinger Med. Ctr. v. Gough, 160 F.R.D. 467, 470 (M.D. Pa. 1994) (citing Olympia Hotels Corp. v. Johnson Wax Dev. Corp., 908 F.2d 1363 (7th Cir. 1990); Technographics, Inc. v. Mercer Corp., 142 F.R.D. 429 (M.D. Pa. 1992)); *see also* Xerox Corp., 576 F.2d at 1059 ("the doctrine of *res judicata* compels the counterclaimant to assert his claim in the same suit for it would be barred if asserted separately, subsequently.") (*citing* Great Lakes Rubber Corp., 286 F.2d at 634).

Crawl Space was required to bring this legal malpractice action against White and Williams as a compulsory counterclaim in the PA litigation, where an arm of White and Williams sought to collect its unpaid legal fees incurred in the same NJ litigation at issue here (Ex. B, Memorandum of Law in Support of Crawl Space's Motion to Transfer Venue, p. 1). Since Crawl Space failed to assert a counterclaim in response to the PA litigation, this case is barred. Crawl Space has already been rebuffed in its misguided attempt to transfer the Pennsylvania litigation to this Court (see Ex. C, Order Denying Motion to Transfer Venue at p. 2). ("A defense of malpractice was not asserted either in the Answer filed in December 2021, ECF 3, or the Rule 16 conference held in March 2022, ECF 12", and "[t]he underlying matter was tried in October 2019, and according to the Complaint Defendant had retained new counsel by October 2020, yet no malpractice claim was brought until now.") The court in the PA litigation further noted that Crawl Space "appears to be engaged in forum shopping." Id.

The PA litigation was brought by PPC on behalf of White and Williams, but as noted by Crawl Space in its Motion to Transfer Venue to this Court, "[a]lthough the matter was brought

by PPC, PPC is simply a collection arm of the law firm White and Williams and the Court has already noted that '[i]n practical terms, it is White and Williams bringing this action.'", and that "this Court has already recognized that the PPC case is in reality White and Williams suing Crawl Space. The parties in both the PPC case and the Malpractice case are therefore the same." Ex. B at pp. 1, 3.

Preliminarily, the claim for unpaid legal fees by PPC in Pennsylvania was brought on November 23, 2021; this case was filed on May 5, 2022 (ECF 1, Complaint), and thus the exception noted in Fed. R. Civ. P. 13(a) does not apply, as the PA litigation was not the subject of another pending action between White and Williams and Crawl Space at the time it was filed.

After White and Williams' case was removed to Federal court in the PA litigation, Crawl Space sought to transfer the claim for unpaid fees to this Court "for consolidation with the Malpractice case", or in the alternative, to "have the Court stay the PPC case pending resolution of the Malpractice case." Ex. B at p. 3. It is clear that Crawl Space recognized that there is a logical relationship between the actions, as demonstrated below.

In its Motion to Transfer Venue, Crawl Space acknowledged the relationship between the PA litigation and the present litigation, stating that White and Williams' legal representation of Crawl Space in the NJ litigation "is the basis for the claim made by PPC for unpaid legal fees."; that "the claim for unpaid fees by White and Williams will be resolved in the Malpractice case"; and that "[g]iven the related issues and parties, there is a strong likelihood that the pending cases will be consolidated. The two pending causes of action can result in one in which Crawl Space is found liable to pay legal fees and in the other Crawl Space may have judgment in its favor for legal malpractice against the same law firm." Id. at pp. 2-3, 9. "The majority of the events

supporting the malpractice claim, however, arose in New Jersey and not in Pennsylvania or

Virginia." Id. at p. 6.

 Crawl Space also noted the risk of inconsistent judgments were the cases not

consolidated: "Crawl Space could be found liable in the PPC case and yet prevail in the

Malpractice case, leading to the inconsistent results that Crawl Space is liable for legal fees to

White and Williams that White and Williams is not entitled to because of its breach of duties to

Crawl Space." Ex. B at p. 11. Therefore, the malpractice claims now presented in this Court are

merely an offshoot of the PA litigation between the parties. By Crawl Space's own admission,

the present case would necessarily involve a duplication of effort, involving the same factual and

legal issues as those raised in the PA litigation. See Transamerica Occidental Life Ins. Co., 292

F.3d at 389–90; Geisinger Medical Center, 160 F.R.D. at 469–70.

The two cases – one for unpaid legal fees and the other for legal malpractice - necessarily

bear a logical relationship. Many Federal and state courts, both in the Third Circuit and

elsewhere, have found that claims for unpaid legal fees and a client's suit for malpractice are

compulsory counterclaims where they are related to the same legal matter for which the client

engaged the attorney; courts have held the same in claims for medical malpractice and claims for

unpaid medical fees. See L. Offs. of Jerris Leonard, P.C. v. Mideast Sys., Ltd., 111 F.R.D. 359,

361 (D.D.C. 1986) ("Under this standard, it is hard to imagine a clearer compulsory counterclaim

to a complaint for failure to pay legal fees than a legal malpractice claim stemming from the

handling of the litigation for which fees are sought. The party raising the malpractice claim is in

effect asserting a defense of failure to perform to the lawyer's claim for breach of contract. The

testimony and documents necessary to litigate both claims are likely to be substantially the

same."); Yarn v. Hamburger L. Firm, LLC, No. CIV.A. 1:12-03096, 2014 WL 2964986, at *4

(D. Md. June 30, 2014) (unreported) ("In this case, Defendants have asserted a counterclaim arising out of the same contract at issue in the initial Complaint. Thus, the parties will raise the same issues of fact and use the same evidence to support and refute Plaintiffs' claim for breach of contract and Defendants' counterclaim. Furthermore, there is a logical relationship between the claim and the counterclaim. As such, this Court concludes that Defendants' counterclaim is compulsory."); Cumberland Farms, Inc. v. Lexico Enterprises, Inc., No. 10-CV-4658 ADS AKT, 2012 WL 526716, at *8 (E.D.N.Y. Feb. 16, 2012) (unreported) ("This case is unlike attorney malpractice suits, relied upon by the Defendant, where courts have almost unanimously held that causes of action for attorneys' fees are compulsory counterclaims.") (citing D'Jamoos v. Griffith, 368 F. Supp. 2d 200, 204 (E.D.N.Y. 2005); Law Offices of Jerris Leonard, P.C., 111 F.R.D. at 361); Geisinger Medical Center, 160 F.R.D. at 469–70 ("Under this analysis, the defendants' medical malpractice claim is a compulsory counterclaim to the plaintiff's claim for unpaid medical bills. In pursuit of that counterclaim, the defendants will be attempting to prove that the care Andrew Gough received failed to meet a reasonable standard of care; in essence, attempting to prove that the plaintiff failed to perform its contractual obligations, a well-established defense to an action for breach of contract…The counterclaim is thus an offshoot of the same basic controversy as the plaintiff's claim and necessarily involves common issues of law and fact that would require duplicative effort if tried in a separate action. Other courts have reached the same conclusion in the same or similar circumstances.") (citing In re McCoy, 373 F. Supp. 870, 873 (W.D. Tex. 1974); Law Offices of Jerris Leonard, P.C., 111 F.R.D. 359; Computone Corp. v. Derieux, No. CIV. A. 93-CV-3368, 1994 WL 29594, at *3 (E.D. Pa. Jan. 28, 1994) n. 5 (E.D. Pa. 1994)); D'Jamoos, 368 F. Supp. 2d at 204 ("courts hold that legal malpractice claims and counterclaims for legal fees arising from that litigation are 'logically related'"); Legal

Malpractice Claim Is Compulsory Counterclaim In Suit For Unpaid Legal Fees, 39 No. 3 Professional Liability Reporter art. 11 (*citing* <u>Soler v. Evans, St. Clair & Kelsey</u>, 2002-Ohio-1246, 94 Ohio St. 3d 432, 763 N.E.2d 1169; <u>Harper v. Anthony</u>, 2014 WL 265574 (Ohio App. Jan. 23, 2014)).

Crawl Space is barred from pursuing this action, since it is clear that its claims for legal malpractice should have been brought as a counterclaim in the PA litigation. As such, the Amended Complaint should be dismissed.

## III.    CONCLUSION

Plaintiff Crawl Space's Amended Complaint against White and Williams fails to state a claim upon which relief can be granted. This Court lacks personal jurisdiction over White and Williams as the parties' contract for legal services in out-of-state litigation, communications regarding that litigation, and Crawl Space's domicile in Virginia are legally insufficient for the existence of jurisdiction over White and Williams by this Court. For these same reasons, venue is improper in this Court. Finally, Crawl Space's claim for legal malpractice is barred as it was required to be brought as a compulsory counterclaim in the PA litigation. Therefore, White and William's Motion to Dismiss should be granted.

WHEREFORE, defendant White and Williams, LLP respectfully requests that this Court grant its Motion to Dismiss, and that an Order be entered dismissing the Amended Complaint of Crawl Space Door System, Inc. d/b/a Crawl Space Door Systems, Inc., with prejudice, with an award to White and Williams for its costs, including reasonable attorneys' fees.

**WHITE AND WILLIAMS, LLP**

By:    /s/ _____
       David D. Hudgins

23

David D. Hudgins (VSB No. 20602)
William F. Gogoel (VSB No. 94765)
HUDGINS LAW FIRM, PC
2331 Mill Road, Suite 100
Alexandria, VA 22314
T: (703) 739-3300;  F: (703) 739-3700
*dhudgins@hudginslawfirm.com*
*wgogoel@hudginslawfirm.com*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of July, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notification of such filing to:

Duncan G. Byers, Esq.
Va. Bar No. 48146
PATTEN, WORNOM, HATTEN &
DIAMONSTEIN
12350 Jefferson Avenue, Suite 300
Newport News, VA 23602
Telephone: (757) 223-4500
Facsimile: (757) 249-1627
dbyers@pwhd.com
cveals@pwhd.com
*Counsel for the Plaintiff, Crawl Space Door System, Inc.*

 /s/ David D. Hudgins
Counsel